UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **ELONA VELCHECK,** ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | Case No. 06-2040 |
| **SECURITY,**[1] ) | |
| Defendant. ) | |

# ORDER

In August 2005, Administrative Law Judge E. James Gildea (hereinafter "ALJ") denied Plaintiff Elona Velchek's application for social security disability insurance benefits (hereinafter "DIB"). The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act based on Plaintiff's capacity to perform past relevant work as of her date last insured. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In February 2006, Plaintiff filed a Complaint To Review Decision of Social Security (#4) seeking judicial review of the final decision by the Regional Commissioner of Social Security Administration (hereinafter "SSA") denying DIB. In August 2006, Plaintiff filed a Motion for Summary Judgment (#12). In November 2006, Defendant filed a Motion for An Order Which Affirms the Commissioner's Decision (#16). After reviewing the administrative record and the parties' memoranda, this Court **GRANTS** Plaintiff's Motion for Summary Judgment (**#12**).

## I. Background
### A. Factual Background

Plaintiff is thirty-nine years old and resides in Decatur, Illinois, with her husband, four-year-old son, and fifteen-year-old daughter. Plaintiff has completed a high school education taking special education classes and has previously worked as a cook, waitress, bartender, dispatcher, bookkeeper, administrative secretary, and administrative assistant. Plaintiff suffers

---

[1] Pursuant to FED. R. APP. P. 43(c), we have substituted Michael J. Astrue for Jo Anne B. Barnhart as the named defendant-appellee.

from severe sciatica, fibromyalgia, carpal tunnel syndrome, and depression. Due to her physical conditions, she went on medical leave in May 2000, the alleged onset date of her disability. She formally resigned her job in November 2000 after the birth of her son. Plaintiff met the disability insured status requirements from May 2000 through December 2005.

No part of Plaintiff's argument or this Court's order rests on Plaintiff's physical impairments, therefore the Court need not describe her treatment related to her physical condition.

In August 2004, Plaintiff began seeing Dr. Choudary Kavuri, a psychiatrist, for mental health treatments at the suggestion of her attorney. (R. 329.) Plaintiff complained of fatigue, stress, and difficulty falling asleep. (R. 399.) Dr. Kavuri prescribed Ambien and Klonopin to address these problems. (R. 399.) Plaintiff also discussed several family problems with Dr. Kavuri. (R. 399.) In September 2004, Plaintiff reported that she was "doing ok" except that she still felt tired a lot. (R. 399.)

In October 2004, Plaintiff met with a counselor who worked with Dr. Kavuri. (R. 398.) The counselor noted a "flat affect that seemed a bit contrived." (R. 398.) The counselor observed that Plaintiff walked with a limp and a cane in the office, but did not do so in the hallway. (R. 398.) After speaking with Plaintiff, the counselor stated that Plaintiff has many issues with her family. (R. 398.) Overall, the counselor said Plaintiff was very negative and complained about everything. (R. 398.) Plaintiff also suggested to the counselor that her doctors are wrong and that she is correct. (R. 398.) The counselor concluded that Plaintiff was "very depressed and needing attention." (R. 398.)

Plaintiff continued her treatments with Dr. Kavuri in October and also met with the counselor again. (R. 396, 397.) On October 14, 2004, Plaintiff stated that she was "not doing well." (R. 397.) Later that month, Dr Kavuri noted that she seemed less anxious, and Plaintiff also stated that she was "doing somewhat better." (R. 397.) When meeting with the counselor in late October, Plaintiff stated that she was "doing much better" after a change to her medicine.

(R. 396.)  The counselor noted that Plaintiff was considering staying with her husband and seemed less focused on her medical problems.  (R. 396.)

In December 2004, Dr. Kavuri signed two forms indicating that Plaintiff met the Social Security listings for anxiety and affective disorders.  (R. 411-12, 414-15.)  Dr. Kavuri indicated that Plaintiff suffers from generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity, and apprehensive expectation resulting in marked restriction of daily living activities, marked difficulties in maintaining social functioning, and deficiencies of concentration and persistence of pace resulting in frequent failure to complete tasks in a timely manner (in work-related settings or elsewhere).  (R. 411-12.)  Dr. Kavuri also indicated that Plaintiff's affective disorder is a depressive syndrome characterized by sleep disturbance, psychomotor agitation or retardation, decreased energy and feelings of guilt or worthlessness resulting in marked restriction of daily living activities, marked difficulties in maintaining social functioning, and deficiencies of concentration and persistence of pace.  (R. 414-15.)

In April 2005, Plaintiff visited Dr. Stephen Vincent, a licensed clinical psychologist,  at the request of the Department of Disability Determination Services for a consultative psychological evaluation.  (R. 427.)  Dr. Vincent's findings are as follows:

> Elona comes with a long history of depression indicating onset in childhood suggestive of dysthymia with full-blown major depressive episode resulting in suicide attempt and subsequent hospitalization at age 15.  She indicates that she has been in and out of treatment since that time with current medications at the present time addressing mood swings with the predominance of depression most noted with associated chronic pain exacerbating her mood disturbances.  She is not psychotic.  She does indicate at times she has a sense of feeling useless and worthless and intermittent thoughts of suicide; although, she denies any current intention or plan to harm herself.  She reports at times pain as well as depression interfere with her ability to think clearly, quickly, and accurately; hence she is rather withdrawn and isolated and avoidant of interacting with others.
> DIAGNOSTIC IMPRESSION:  Axis I:  Major Depression.

(R. 430.)

## B. Procedural Background

In October 2002, Plaintiff applied for DIB, alleging disability beginning May 2000 due to disorders of muscle, ligament, and fascia as well as discogenic and degenerative disorders of her back. (R. 22.) These claims were later revised to include fibromyalgia, affective disorder anxiety, and depression. (R. 431.) The SSA denied Plaintiff's application initially in December 2002 and upon reconsideration in March 2003. (R. 23-31.)

Plaintiff requested a hearing which ALJ Gildea held in December 2004. In August 2005, the ALJ issued a decision denying Plaintiff benefits. (R. 14-20.) The ALJ made the following findings: (1) the claimant had met the disability insured status requirements of the Social Security Act from May 2, 2000, through December 31, 2005; (2) the claimant has not engaged in substantial gainful activity since May 2, 2000; (3) the medical evidence establishes that the claimant has severe sciatica, fibromyalgia, carpal tunnel syndrome, and depression, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4; (4) the claimant's alleged limitations were not fully credible, as they were not fully supported by the medical evidence or relevant credibility factors; (5) the claimant had the residual functional capacity to perform work-related activities at the medium exertional level except for work involving the use of either hand for fine manipulations or complex tasks; (6) the claimant's past relevant work as cook, waitress, bartender, or dispatcher did not require the performance of work-related activities precluded by the above limitations; (7) the claimant's impairments did not prevent her from performing her past relevant work; and (8) the claimant was not under a "disability" as defined by the SSA at any time through the date of the decision. (R. 19.) The ALJ also found that Plaintiff's subjective complaints were not credible. (R. 17.) Based on the vocational expert's (hereinafter "VE") testimony, the ALJ further found that Plaintiff possessed the residual functional capacity to perform her former work as a cook, waitress, bartender, or dispatcher. (R. 18.)

Plaintiff appealed to the Appeals Council, which denied her request for review. (R. 5-9.) The Appeals Council rejected Plaintiff's request, concluding that her exceptions to the ALJ's decision did not provide a basis for the Appeals Council to assume jurisdiction. (R. 5-9.)

In February 2006, Plaintiff filed a Complaint (#4) seeking review of the final administrative decision. In August 2006, Plaintiff filed a Motion for Summary Judgment (#12), and in November 2006, Defendant filed a Motion for an Order which Affirms the Secretary's Decision (#16).

## II. Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Regional Commissioner as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court gives considerable deference to the ALJ's credibility determinations and will not overturn them unless the plaintiff can show that those findings are patently wrong. *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992).

## III. Analysis

To be considered eligible for social security benefits, a claimant must be disabled. The SSA defines "disabled" as "the inability to engage in any substantial gainful activity by reason of medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations use a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)-(f). The ALJ must follow these steps in sequence, considering: (1) whether the claimant is presently employed; (2) whether the claimant's impairment is "severe"; (3) whether the claimant's impairment meets or exceeds one of a list of specific impairments; (4) whether the claimant is unable to perform his or her former occupation;

and (5) whether the claimant is unable to perform any other work within the economy. *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984). Once the claimant has satisfied the first two steps, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment, but cannot perform her past work, the burden shifts to the Commissioner to show that the claimant can perform some other job. *Pope v. Shalala*, 998 F.2d 473, 477-78 (7th Cir. 1993).

In this case, the ALJ determined that Plaintiff was not presently employed and had a severe impairment, thus Plaintiff satisfied Steps One and Two of the test. (R. 19.) However, Plaintiff failed to satisfy Step Three of the test because her disability did not meet a listed impairment in Appendix I. (R. 19.) In addition, based on the testimony of the vocational expert, the ALJ found that Plaintiff did not satisfy Step Four of the test because she could perform past relevant work. (R. 19.) Thus, the ALJ found that Plaintiff was not disabled according to the Social Security Act, and so was not eligible for DIB. (R. 19.)

Plaintiff argues that the ALJ erred by: (1) substituting his own opinion for a treating physician's opinion at Step Three; (2) using Plaintiff's reported daily activities as part of his credibility assessment; and (3) finding that Plaintiff could perform her past relevant work at Step Four. Because the first issue provides a basis for disposing of the case, the Court will not address the other issues.

Plaintiff first argues that the ALJ substituted his own judgment for that of a treating physician by not giving controlling weight to Dr. Kavuri's opinion that Plaintiff met the listings for anxiety-related and affective mental disorders. This Court agrees that the ALJ erred by substituting his own judgment for Dr. Kavuri's medical opinion.

Dr. Kavuri's medical opinion was entitled to controlling weight because it was well supported by medical findings and not inconsistent with other substantial evidence in the record. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2)). Dr. Kavuri's notes indicate fatigue, stress, suicidal tendencies, constant pain and complaints,

anxiety, major depression, and generalized anxiety.  There is no substantial evidence in the record to undermine these findings.  Furthermore, Dr. Kavuri's medical opinion is well-supported by and not inconsistent with Dr. Vincent's psychological evaluation.  Like Dr. Kavuri, Dr. Vincent diagnosed Plaintiff with "Major Depression."  Dr. Vincent noted that Plaintiff has a long history of depression.  According to Dr. Vincent, this depression is characterized by mood swings, feelings of uselessness and worthlessness, intermittent thoughts of suicide, difficulties thinking clearly, quickly and accurately, and social isolation and anxiety.  Thus, Dr. Vincent's findings parallel Dr. Kavuri's opinion.

Defendant contends that the ALJ's decision to give Dr. Kavuri's opinion limited weight was supported by substantial evidence.  Specifically, Defendant contends that Dr. Kavuri was incorrect about the extent to which Plaintiff's mental impairments limited her daily activities, social functioning, and concentration.   In support, Defendant relies on the medical opinions of two state agency reviewing physicians:  Dr. Graham and Dr. Burris.  However, these examinations were made strictly on the basis of Plaintiff's physical impairments.  Neither Dr. Graham nor Dr. Burris assessed Plaintiff's psychological impairments as they relate to the listings described by Dr. Kavuri.  Thus, these examinations have no bearing on Dr. Kavuri's medical opinion of Plaintiff's mental impairments.  Defendant also contends that the notes of Dr. Kavuri and the counselor do not support their conclusions.  When Dr. Kavuri determined that Plaintiff met a listing, he presumably based his decision on his own clinical observations and the notes of the counselor.  It is not for this Court to "play doctor" and decide the extent to which Plaintiff's conditions may or may not be disabling.  In the absence of contradictory medical evidence or other authority in the record, the ALJ cannot reject the treating physician's medical opinion.  Because there is no such evidence in the record, the ALJ's decision cannot stand.  Accordingly, the Court grants Plaintiff's motion for summary judgment.

### IV.  Summary

For the reasons set forth above, this Court **GRANTS** Plaintiff's Motion for Summary Judgment (**#12**).  The decision of the ALJ is reversed and the case remanded for an award of benefits pursuant to Sentence 4 of 42 U.S.C. § 405(g).[2]  Remand pursuant to 42 U.S.C. § 405(g), Sentence 4, will terminate the case.  *Shalala v. Schaefer*, 509 U.S. 292, 299 (1993) (a Sentence 4 remand order terminates the case).

ENTER this 16th day of March, 2007.

s/ DAVID G. BERNTHAL<br>U.S. MAGISTRATE JUDGE

---

[2]Under 42 U.S.C. § 405(g), Sentence 4, "[t]he court shall have power to enter, upon pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."