UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| ELONA VELCHECK,<br>    **Plaintiff,**<br> v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br>    **Defendant.** | Case No. 06-2040 |

# ORDER

  In August 2005, Administrative Law Judge James Gildea (hereinafter "ALJ") denied Plaintiff Elona Velchek's application for social security disability insurance benefits (hereinafter "DIB"). Plaintiff appealed the decision to this Court. In March 2007, the Court entered orders granting Plaintiff's Motion for Summary Judgment (#12) and denying Defendant's Motion for an Order Which Affirms the Commissioner's Decision (#16). The Court ordered the case remanded for an award of benefits pursuant to Sentence 4 of 42 U.S.C. § 405(g).

  Following entry of those orders, in March 2007, Defendant filed a Motion To Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) (#20). After reviewing the administrative record and the parties' memoranda, this Court **GRANTS** Defendant's Motion To Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) **(#20).**

### I. Background

  Plaintiff was thirty-nine at the time of the ALJ's decision. She has a high-school education in special education classes. She previously worked as a cook, waitress, bartender, dispatcher, bookkeeper, administrative secretary, and administrative assistant. Plaintiff alleged that she became disabled in May 2000 based on her physical condition. She later revised this to include disability based on fibromyalgia, affective disorder anxiety, and depression. (R. 431.) The Court described the procedural history in its previous order and will not repeat it here.

---

[1] Pursuant to FED. R. APP. P. 43(c), we have substituted Michael J. Astrue for Jo Anne B. Barnhart as the named defendant-appellee.

## A. Plaintiff's Mental Health

The Court's previous order described Plaintiff's mental health history at length. Below is a brief description of mental health records.

Plaintiff has a severe depressive disorder. Based on the record, she sought no medical treatment for her depression from the alleged onset of disability in May 2000 until August 2004, when Plaintiff went to see Dr. Choudary Kavuri at the request of her attorney. She also began meeting with a counselor on a weekly basis around the same time. The counselor noted "a flat affect that seemed a bit contrived." (R. 398.) Ultimately, the counselor concluded that Plaintiff was "very depressed and needing attention." (R. 398.)

Plaintiff met with Dr. Kavuri in August, September, and October 2004. After the first appointment, Dr. Kavuri prescribed Ambien and Klonopin to address Plaintiff's complaints of fatigue, stress, and difficulty falling asleep. (R. 399.) Plaintiff also discussed several family problems with Dr. Kavuri. (R. 399.) In September 2004, Plaintiff reported that she was "doing ok" except that she still felt tired a lot. (R. 399.) On October 14, 2004, Plaintiff stated that she was "not doing well." (R. 397.) Later that month Dr Kavuri noted that she seemed less anxious, and Plaintiff told him that she was "doing somewhat better." (R. 397.) This appears to be the last time Plaintiff met with Dr. Kavuri. In December 2004, Dr. Kavuri completed two forms, indicating that Plaintiff exhibited the symptoms of Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders).

In April 2005, Dr. Stephen Vincent, a licensed clinical psychologist, performed a consultative psychological evaluation at the request of the Department of Disability Determination Services. (R. 427.) Plaintiff told him that she had been depressed for years and had attempted suicide at age fifteen. (R. 430.) Dr. Vincent diagnosed her as having major depression, however, he noted that she had only moderate limitations in her ability to understand and carry out instructions and to respond appropriately to supervision, coworkers, and work pressure. (R. 434-35.)

## B. Plaintiff's Physical Condition
### 1. Plaintiff's testimony

Plaintiff testified that she has bilateral carpal tunnel syndrome. She had two surgeries and continues to have problems. Two fingers on her right hand are numb at the end and they do not bend correctly. Her left hand has similar symptoms. She takes Tylenol every other day or more often when the weather is cold. She does not take any prescription medicine for her hands.

She also has lower back pain, fibromyalgia, knee pain for which she wears braces, and problems with her right hip. Her back pain stems from soft tissue injury as a result of a car accident. She went to a doctor who prescribed therapy. She testified that she has some subligations in her neck and lower spine and some deterioration.

Plaintiff drives her children to school every day. She does not do much housework. She sits on the couch and watches television or watches what is going on around her. She does not cook or grocery shop. She testified she has no friends or relatives. She testified that when she sits for a while, her back will get stiff after fifteen to twenty minutes. She has braces on both knees, and when the pain in her knees gets severe enough she will use crutches. She does not exercise or do any kind of therapy. She thinks she can stand for thirty to forty-five minutes at a time. When she walks she moves slowly. She can probably walk for an hour with a couple of breaks. She testified that doctors have not limited her physical activities. (R. 467.)

When her fibromyalgia flares up, she experiences pain in her shoulders, arms, knees, back, neck and head. She then will take a couple of Tylenol and lie down for one to three hours. These flare-ups occur about once a week. She has trouble lifting and carrying heavy things, such as, for example, a gallon of milk, but no difficulty with small objects, such as pencils or coins. She testified that she experiences fatigue and headaches on a daily basis.

### 2. Medical Records

In November 2000, Dr. A. B. DevlescHoward performed nerve conduction studies and diagnosed Plaintiff with mild to moderate carpal tunnel syndrome. (R. 165.) She underwent

3

therapy. In September 2002, she returned to Dr. DevlescHoward, complaining of constant pain in her wrists, fingers, and thumbs. (R. 162.) He noted that objective tests indicated no greater proximal entrapment, only very "subtle" changes in the electrical data, and no evidence of axon (nerve process) loss or motor abnormality. (R. 162.) In October 2002, Plaintiff complained to Dr. Michael Brustein of worsening carpal tunnel syndrome. He diagnosed bilateral carpal tunnel with right lateral epicondylitis. He performed surgery for the carpal tunnel syndrome and treated Plaintiff conservatively for the epicondylitis. Following the surgery, Dr. Brustein noted that Plaintiff had recovered full range of motion without any neurovascular damage. Plaintiff then requested surgery for her left hand. (R. 260.) In December 2002, Plaintiff reported she still had some hand and wrist pain, but her elbow was much better. (R. 260.)

In March and August 2003, Dr. Brustein gave Plaintiff injections for finger locking and triggering. (R. 258-59.) Plaintiff canceled her left hand surgery around this time. (R. 258.) In June 2003, Dr. DevlescHoward performed an electrodiagnostic study that showed slowing of the left median nerve through the carpal tunnel area and mild to moderate demyelination, but no signs of specific nerve root involvement. (R. 354-55.) An October 2003 x-ray showed very minimal osteoarthritic changes in both hands. In July 2004, Plaintiff underwent release of her right trigger and long fingers. (R. 321, 323.) In September 2004, Dr. Brustein noted that Plaintiff complained of pain but had nearly full range of motion and was neurovascularly intact. (R. 417.) He recommended therapy for her pain but Plaintiff refused.

Between May and August 2001, Plaintiff saw Dr. David Baumberger for treatment of lower back muscle strain as a result of a car accident. (R. 180-85.) In August 2001, Dr. Baumberger reported that Plaintiff was doing much better and had no symptoms of back, neck, or arm pain. She was continuing to exercise and not taking any medication. She had full range of motion in her shoulders and elbows and normal reflexes. She exhibited no discomfort when he examined her. He concluded that her back issues were resolved and recommended maintenance exercise. Plaintiff returned to Dr. Baumberger in September and December 2001 and January 2002 complaining of low back pain. (R. 175-78.) Dr. Baumberger prescribed physical therapy and Plaintiff's condition improved. In March 2002, Plaintiff reported that her

pain was one on a scale of one to ten with ten being the most severe. At the next appointment, her therapist said she was "nearing 100%." (R. 202.) In May 2002, Plaintiff did not have any back pain except when she overdid it. (R. 174.)

In October 2003, Plaintiff complained to Dr. Nehemiah Tan, a rheumatologist, that she had pain in her hand, elbow, low back, neck, and upper back, and she was depressed. After examining Plaintiff and reviewing lab work, Dr. Tan opined that most likely Plaintiff had fibromyalgia rather than inflammatory arthritis. In January and May 2004, Dr. Tan noted tender points for fibromyalgia, but no inflammation of the joint membrane lining. He continued to prescribe an antidepressant and sleep medication. In June 2004, Plaintiff told Dr. Tan that she was feeling much better overall and Dr. Tan noted that her fibromyalgia, depression, and sleep had all improved. In October 2004, Plaintiff complained of ongoing pain in her right knee. Dr. Tan examined her and found her knee was tender and made crackling noises, but it was not swollen or deformed and otherwise tested negative. He prescribed physical therapy.

## II. Standard

A Rule 59(e) motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *LB Credit Corp. v. Resolution Trust Corp.,* 49 F.3d 1263, 1267 (7th Cir. 1995). Here, Defendant contends that the Court erred; he does not seek to present new evidence.

The district court has discretion to determine whether to grant a Rule 59(e) motion. *See Pickett v. Prince,* 207 F.3d 402, 407 (7th Cir. 2000) (stating "a motion to reconsider a *ruling* is constrained only by the doctrine of the law of the case. And that doctrine is highly flexible, especially when a judge is being asked to reconsider his own ruling.") (emphasis in original). "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.,* 51 F.3d 746, 749 (7th Cir. 1995). The purpose of a motion to reconsider a judgment is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory. *Bordelon v. Chi. Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000).

Moreover, the purpose of such a motion "is not to give the moving party another 'bite of the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *Yorke v. Citibank, N.A. (In re BNT Terminals, Inc.),* 125 B.R. 963, 977 (N.D. Ill. 1990) (citing *F.D.I.C. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir. 1986) (other citations omitted)). As one court stated, a Rule 59(e) motion is not "a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *Id.*

### III. Analysis

Defendant argues that the Court erred when it ordered a remand for benefits because the case does not meet the standard for such an award and because the Court improperly weighed evidence to make factual findings. Alternatively, if the Court determines that a remand for benefits is still appropriate, Defendant asks for remand to determine the onset date of disability.

Defendant contends that the Court made the following legal errors: (1) The Court inaccurately assessed the extent to which Dr. Kavuri's notes support his opinion of a severe, listing-level impairment; (2) the Court erred by finding that Dr. Kavuri's opinion that Plaintiff had marked restrictions in daily living activities, social functioning, and concentration, persistence, or pace, was not inconsistent with Dr. Vincent's opinion; and (3) when the Court evaluated the opinion of Dr. Kavuri, it inappropriately assumed the role of fact finder.

### A. The Motion for Reconsideration: Dr. Kavuri's Opinions

In its previous order, the Court stated that the ALJ should have given controlling weight to Dr. Kavuri's opinion that Plaintiff met the requirements for Listings 12.04 and 12.06. Defendant contends that the record does not support Dr. Kavuri's conclusions that Plaintiff exhibited persistent motor tension, autonomic hyperactivity, or apprehensive expectation (elements of 12.06A), or persistent psychomotor agitation or retardation, or feelings of guilt or worthlessness (elements of 12.04A).

The Court agrees that it erred. The Court has reviewed the medical records and concludes that neither Dr. Kavuri's notes nor the rest of the medical record provide any support for a finding that Plaintiff exhibited psychomotor agitation or retardation, motor tension, autonomic hyperactivity, or apprehensive expectation. Moreover, Defendant is correct that Dr. Kavuri's notes do not support his statement that Plaintiff's symptoms noted on the check-off form were persistent. For purposes of the Listings, persistent means that the longitudinal clinic record shows that the required finding is, or is expected to be, present for a continuous period of twelve months.[2] Here, the record does not show that the particular elements at issue were present for twelve months, nor does the medical evidence indicate that they might be expected to last that long. This is particularly true considering the relatively short period during which Dr. Kavuri treated Plaintiff (from August 2004 to October 2004, with a final form filled out in December 2004) and the lack of any other medical treatment for depression.

Dr. Vincent's notes document that Plaintiff felt worthless, but he did not refer to psychomotor agitation, retardation, or other symptoms at issue. In addition, Dr. Vincent assessed Plaintiff as having only moderate limitations, which is inconsistent with the marked restrictions noted by Dr. Kavuri. Thus, not only do Dr. Vincent's clinical notes *not* support a finding of persistent symptoms of psychomotor agitation or retardation, they also are inconsistent with Dr. Kavuri's opinions regarding the degree of restrictions.

The Court erred when it concluded that Dr. Kavuri's opinions were entitled to controlling weight. Upon reconsideration, the Court finds that the ALJ did not err in giving limited weight to Dr. Kavuri's opinions expressed in his letter dated December 2004.

---

[2]Section 12.00 of the Appendix does not define "persistent," but other sections of the Listings include a definition and those sections define it in the context of "these listings." The definitions are all substantially the same and it is reasonable to conclude that the same definition applies to Section 12.00. A typical definition provides as follows:
> F. What does the term "persistent" mean in these listings?
> Persistent means that the longitudinal clinical record shows that, with few exceptions, the required finding(s) has been at, or is expected to be at, the level specified in the listing for a continuous period of at least 12 months.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 6.00F; see also, e.g., 4.00A3b and 104.00A3b.

7

## B. The Motions for Summary Judgment

Because the Court based its previous order on Dr. Kavuri's opinions that Plaintiff's impairments met Listings 12.04 and 12.06, it did not address Plaintiff's other arguments in her motion for summary judgment. Those arguments are that the ALJ erred by (1) using Plaintiff's reported daily activities to determine that she could perform substantial activity, and (2) finding that Plaintiff could perform her past relevant work at Step Four. The Court will now consider those arguments.

### 1. Plaintiff's Activities of Daily Living

Plaintiff next argues that the ALJ erred and overstepped his bounds when he used Plaintiff's reported activities of daily living to conclude that she could perform substantial activity and to support a finding of not disabled. Plaintiff relies on *Shramek v. Apfel*, in which the Seventh Circuit court stated that work such as caring for the house and children does not contradict a claimant's claim that she was significantly limited in performing prolonged sitting, standing, and walking. As a result, the court held it was not a basis for finding the claimant not credible. *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000). *See also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (stating that minimal daily activities such as two hours of household chores, cooking simple meals, and going grocery shopping occasionally did not establish that the claimant did not suffer from disabling pain); *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (stating that sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity).

Plaintiff particularly notes that the ALJ stated as follows:

> The claimant has consistently reported that she does little or nothing around the house, except that she stated in December 2002 that she was a "stay-at-home mom" and this kept her very busy. She reported activities such as bending, stopping, crouching, driving, baking and cooking. (exhibit 6E) The undersigned concludes, based on this report, that the claimant engages in daily activities consistent with the performance of substantial activity.

(R. 17.) Plaintiff states that "[t]he Judge's decision is very misleading because he uses the Claimant's daily activities and concludes that because she can bend, stoop, crouch, drive, and cook that she can work." (#11, p. 7.) She contends that this does not make sense based on her

8

testimony that she does not cook and she experienced pain associated with these activities. Plaintiff notes that the ALJ indicated that the record reflects continuous complaints of pain, especially in her lower back, knees, and ankles. In describing her background, Plaintiff notes that she uses a cane or crutches when needed; she reported difficulty sleeping and concentrating due to pain; and she reported that she does little or nothing around the house. (R. 139.)

The cases Plaintiff relies on are fact-specific and Plaintiff has not explained how they apply to her situation. Plaintiff has not discussed or referred to any medical evidence that indicates she is unable to perform substantial activity. In fact, Plaintiff testified that no doctor had restricted her physical activity.

Moreover, the cases Plaintiff cited do not stand for the premise that an ALJ may not consider a claimant's daily activities when determining whether she can perform substantial activity. In fact, the regulations expressly provide that an ALJ can consider factors relevant to a claimant's symptoms, including daily activities, medication taken to alleviate pain or other symptoms, and treatment, among other things. 20 C.F.R. § 1529(c)(3). Thus, the ALJ may consider activities of daily living when evaluating a claimant's symptoms, and the ALJ here did not err by doing so.

Plaintiff appears to be arguing that the ALJ erred because he relied *solely* on Plaintiff's daily activities to determine she was not disabled. The Court has carefully reviewed the ALJ's decision, and this clearly is not what happened. The ALJ discussed at length the medical evidence regarding Plaintiff's physical condition. He concluded that "the medical evidence does not establish a condition which prevents all work activity." (R. 16.) He then considered Plaintiff's daily activities and concluded that her activities were consistent with his previous conclusion that her physical condition did not preclude her from performing work activities.

Thus, to the extent that Plaintiff suggests the ALJ's disability determination was based solely on Plaintiff's daily activities, Plaintiff's contention is without merit. The ALJ is entitled

9

to consider a claimant's daily activities and he did so, in conjunction with his comprehensive discussion of Plaintiff's physical and mental condition.

## 2. The ALJ's Step Four Analysis

Plaintiff next argues that the ALJ erred by determining that Plaintiff could perform her past work as cook, bartender, waitress, or dispatcher. According to the DOT, these jobs all require occasional or frequent fingering and handling and each is identified as either skilled or semi-skilled. As a result, Plaintiff contends that these jobs do not satisfy the ALJ's residual functional capacity of unskilled work with no fine manipulations with either hand.

The Court has reviewed the ALJ's decision and particularly notes that it states Plaintiff has the residual functional capacity to perform "medium work, with no use of either hand for fine manipulations, and *no complex tasks*." (R. 19, emphasis added.) Thus, the ALJ limited Plaintiff to work that did not require "complex tasks." At no point did the ALJ state that Plaintiff was limited to "unskilled" work, which has a specific meaning in the Social Security context.[3]

Semi-skilled work is "work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 1568(b). This definition of semi-skilled work is consistent with work that does not include "complex tasks." As Plaintiff noted, three of her past jobs, waitress, bartender, and dispatcher, are categorized as semi-skilled jobs. Thus, a restriction to work with no complex tasks does not preclude performance of these jobs. In addition, the VE testified that including the "no complex tasks" requirement would not eliminate Plaintiff's past jobs of waitress, bartender, and dispatcher. The ALJ is entitled to rely on the VE's testimony. *Fast v. Barnhart*, 397 F.3d 468, 472 (7th Cir. 2005).

Plaintiff also contends that these jobs require occasional or frequent fingering and handling, therefore they do not satisfy the ALJ's hypothetical which eliminated any jobs

---

[3]The regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 1568(a).

requiring fine manipulations of either hand. Plaintiff's argument assumes that all fingering is considered fine manipulation, but she provides no authority to support that premise. Moreover, the VE expressly testified that a restriction on fine manipulation did not eliminate the jobs of cook, waitress, bartender, and dispatcher. Accordingly, the Court concludes that Plaintiff's past jobs of waitress, dispatcher, and bartender are not inconsistent with the ALJ's residual functional capacity assessment and the ALJ did not err by determining that Plaintiff could perform them.

### IV. Summary

For the reasons set forth above, this Court **GRANTS** Defendant's Motion To Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) **(#20)** and vacates the judgment entered March 16, 2007. Upon reconsideration, the Court affirms the decision of the ALJ. The Clerk of the Court is directed to moot all pending motions and enter judgment in favor of Defendant and against Plaintiff. This case is terminated.

ENTER this 12th day of October, 2007.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE
